# EXHIBIT "5"



*Supplemental Directive 09-08*                                    *November 3, 2009*

## *Home Affordable Modification Program – Borrower Notices*

### Background

In Supplemental Directive 09-01, the Treasury Department (Treasury) announced the eligibility, underwriting and servicing requirements for the Home Affordable Modification Program (HAMP). Under HAMP, servicers apply a uniform loan modification process to provide eligible borrowers with sustainable monthly payments for their first lien mortgage loans. While HAMP program guidelines are intended to reach a broad range of at-risk borrowers, there will be loans that cannot be approved for a HAMP Trial Period Plan (Trial Period Plan) or official HAMP modification, and there will be borrowers who choose not to accept a Trial Period Plan or official HAMP modification offer. In such cases, borrowers must be informed in writing of the reasoning for servicer determinations regarding program eligibility.

This Supplemental Directive provides guidance to servicers of first lien mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac (Non-GSE Mortgages). Servicers of mortgage loans that are owned or guaranteed by Fannie Mae or Freddie Mac should refer to the related HAMP guidelines issued by the applicable GSE.

Servicers participating in HAMP with respect to Non-GSE Mortgages are required to execute a Servicer Participation Agreement, through which they are contractually obligated to "perform the services required under the Program Documentation and the Agreement in accordance with the practices, high professional standards of care, and degree of attention used in a well managed [servicing] operation". That high standard of care is considered to include providing borrowers with timely and accurate written communication about the modification process, including but not limited to, notice that a borrower will not be offered a HAMP modification. This Supplemental Directive provides servicers with additional guidance related to the format, content and timing of notices that must be provided to borrowers requesting consideration for a HAMP modification (Borrower Notices). This Supplemental Directive is effective January 1, 2010; however, servicers are encouraged to implement this guidance as soon as possible.

### Borrower Notices

A servicer must send a Borrower Notice to every borrower that has been evaluated for HAMP but is not offered a Trial Period Plan, is not offered an official HAMP modification, or is at risk of losing eligibility for HAMP because they have failed to provide required financial documentation. The written notices must comply with all laws, rules and regulations including but not limited to, the Equal Credit Opportunity Act, when applicable to the transaction.

Evaluation for HAMP. Supplemental Directive 09-06 announced additional data reporting requirements that are triggered when a mortgage loan is evaluated for HAMP. It provided that a mortgage is evaluated for HAMP when one of the following events has occurred:

- A borrower has submitted a written request (either hardcopy or electronic submission) for consideration for a HAMP modification that includes, at a minimum, current borrower income and a reason for default or explanation of hardship, as applicable; or
- A borrower has verbally provided sufficient financial and other data to allow the servicer to complete a Net Present Value (NPV) analysis; or
- A borrower has been offered a Trial Period Plan.

When a borrower is evaluated for HAMP and the borrower is not offered a Trial Period Plan or official HAMP modification, servicers are required to provide data specified in *Schedule IV* of Supplemental Directive 09-06 (Schedule IV) to Fannie Mae as Treasury's program administrator. The data reporting requirements in Schedule IV are designed to document the disposition of borrowers evaluated for HAMP.

Whenever a servicer is required to provide data specified in Schedule IV, the servicer must also comply with the requirements in this Supplemental Directive and send the appropriate Borrower Notice. With the exception of the Notice of Incomplete Information, all Borrower Notices must be mailed no later than 10 business days following the date of the servicer's determination that a Trial Period Plan or official HAMP modification will not be offered. Borrower Notices may be sent electronically only if the borrower has previously agreed to exchange correspondence relating to the modification with the Servicer electronically.

Content of Borrower Notices. The content of the Borrower Notices will vary depending on the information intended to be conveyed or the determination made by the servicer. All Borrower Notices must be written in clear, non-technical language, with acronyms and industry terms such as "NPV" explained in a manner that is easily understandable. The explanation(s) should relate to one or more of the Not Approved/Not Accepted reason codes specified in Schedule IV. Model clauses for reasons that relate to the codes in Schedule IV are attached as Exhibit A. Use of the model clauses is optional; however, they illustrate a level of specificity that is deemed to be in compliance with the language requirements of this Supplemental Directive.

- *Non-Approval* – for borrowers not approved for a Trial Period Plan or official HAMP modification, this notice must provide the primary reason or reasons for the non-approval. The notice must also describe other foreclosure alternatives for which the borrower may be eligible, if any, including but not limited to other modification programs, short sale and/or deed in lieu or forbearance, and identify the steps the borrower must take in order to be considered for those options. If the servicer has already approved the borrower for another foreclosure alternative, information necessary to participate in or complete the alternative should be included. Whenever a non-government foreclosure prevention option is discussed, the notice should be clear that the borrower was considered for but is not eligible for HAMP.

When the borrower is not approved for a HAMP modification because the transaction is NPV negative, the notice must, in addition to an explanation of NPV, include a list of certain input fields that are considered in the NPV decision and a statement that the borrower may, within 30 calendar days of the date of the notice, request the date the NPV calculation was completed and the values used to populate the NPV input fields defined in Exhibit A. The purpose of providing this information is to allow the borrower the opportunity to correct values that may impact the analysis of the borrower's eligibility.

If the borrower, or the borrower's authorized representative, requests the specific NPV values orally or in writing within 30 calendar days from the date of the notice, the servicer must provide them to the borrower within 10 calendar days of the request. If the loan is scheduled for foreclosure sale when the borrower requests the NPV values, the servicer may not complete the foreclosure sale until 30 calendar days after the servicer delivers the NPV values to the borrower. This will allow the borrower time to make a request to correct any values that may have been inaccurate.

Upon written receipt from the borrower of evidence that one or more of the NPV values is inaccurate, the servicer must verify the evidence and if accurate must re-run the NPV calculation if the correction is material and is likely to change the NPV outcome. Other values not affected by the correction do not need to be changed from the first NPV calculation. If the borrower identifies inaccuracies in the NPV values, the servicer must suspend the foreclosure sale until the inaccuracies are reconciled. Servicers are not required to provide the numeric NPV results or NPV input values not enumerated in Exhibit A.

- *Payment Default During the Trial Period Plan* – this notice informs the borrower that the borrower failed to make all the trial period payments by the end of the Trial Period Plan and is in default. The notice must also describe other foreclosure alternatives for which the borrower may be eligible, if any, including but not limited to other modification programs, short sale and/or deed in lieu or forbearance and identify the steps the borrower must take in order to be considered for these options. If the servicer has already approved the borrower for another foreclosure alternative, information necessary to participate in or complete the alternative should be included. Whenever a non-government foreclosure prevention option is discussed, the notice should be clear that the borrower was considered for but is not eligible for HAMP.

- *Loan Paid Off or Reinstated* – this notice confirms that the subject loan was paid off or reinstated and must provide the payoff or reinstatement date. If the loan was reinstated this notice must include a statement that the borrower may contact the servicer to request reconsideration under HAMP if they experience a subsequent financial hardship.

- *Withdrawal of Request or Non-Acceptance of Offer* – this notice confirms that the borrower withdrew the request for consideration for either a Trial Period Plan or HAMP modification or did not accept a either a Trial Period Plan or a HAMP modification offer. Failure to make the first trial period payment in a timely manner is considered non-acceptance of the Trial Period Plan.

- *Incomplete Information* – this notice provides a list of the financial verification documents the servicer previously requested from the borrower but has not received. Servicers must develop and implement outreach procedures to obtain financial information from borrowers who do not provide verification documentation in a timely manner. As part of these procedures, the servicer must mail the borrower a notice listing all documents needed to complete the evaluation and a date by which the information must be received before the borrower becomes ineligible for HAMP. If the borrower fails to provide all required verification documents by the date provided, the servicer will declare the borrower ineligible for a modification and send the borrower a Non-Approval Notice.

  When used to determine if a borrower is qualified for a verified income Trial Period Plan, the servicer must send the notice to the borrower no earlier than 30 days after the date of the first written request for documentation and not less than 30 days before the servicer discontinues its evaluation for HAMP. When used in conjunction with a Trial Period Plan based on stated income, the servicer must send the notice not less than 30 calendar days prior to the expiration of a Trial Period Plan.

  As provided in Supplemental Directive 09-01, a servicer that offers a Trial Period Plan to a borrower based on stated income must obtain financial documentation in order to verify the borrower's eligibility for a HAMP modification. Supplemental Directive 09-01 provides that the servicer may, in its discretion, consider the offer of a Trial Period Plan to have expired at the end of 60 days if the borrower has not submitted the required documentation. The servicer must consider the Trial Period Plan to have expired if the borrower has not submitted the required documentation by the end of the trial period.

All Borrower Notices must also include the following:

- A toll-free number through which the borrower can reach a servicer representative capable of providing specific details about the contents of the Borrower Notice and reasons for a non-approval determination.
- The HOPE Hotline Number (888-995-HOPE), with an explanation that the borrower can seek assistance at no charge from HUD-approved housing counselors and can request assistance in understanding the Borrower Notice by asking for MHA HELP.
- Any information, disclosures or notices required by the borrower's mortgage documents and applicable federal, state and local law.

## Compliance

Treasury has selected Freddie Mac to serve as its compliance agent for HAMP. Supplemental Directive 09-01 describes the overall roles and responsibilities of servicers and the compliance agent in performing servicer reviews and oversight, which are unchanged by this Supplemental Directive. As compliance agent, Freddie Mac will examine the expanded reporting codes provided to Treasury, the content and distribution of Borrower Notices sent to borrowers, and the responsiveness of the servicer's customer service hotline for borrowers seeking additional detail about the information contained in the Borrower Notice. Servicers are expected to retain in the

borrower file a copy of the Borrower Notice(s) sent to the borrower.  The review will also confirm the existence and evaluate the effectiveness of the servicer's quality assurance program as it relates to the notification process and customer service hotline. Such evaluation will include, without limitation, the timing and size of the sample selection, the scope of the quality assurance reviews, and the reporting and remediation process.

## Exhibit A

### Model Clauses for Borrower Notices

The model clauses in this exhibit provide sample language that may be used to communicate the status of a borrower's request for a Home Affordable Modification. The model clauses relate to the Not Approved/Not Accepted reason codes in *Schedule IV* of Supplemental directive 09-06. Use of the model clauses is optional, however, they illustrate a level of specificity that is deemed to be in compliance with language requirements of the program.

#### *Non Approval Notice*

1. **Ineligible Mortgage.** We are unable to offer you a Home Affordable Modification because your loan did not meet one or more of the basic eligibility criteria of the Home Affordable Modification Program.

   ☐ You did not obtain your loan on or before January 1, 2009.

   ☐ Your loan with us is not a first lien mortgage.

   ☐ The current unpaid principal balance on your loan is higher than the program limit. ($729,750 for a one unit property, $934,200 for a two unit property, $1,129,250 for a three unit property and $1,403,400 for a four unit property).

2. **Ineligible Borrower.** We are unable to offer you a Home Affordable Modification because your current monthly housing expense, which includes the monthly principal and interest payment on your first lien mortgage loan plus property taxes, hazard insurance and homeowner's dues (if any) is less than or equal to 31% of your gross monthly income (your income before taxes and other deductions) which, (*select one*) [you told us is $_____ ] OR [we verified as $_____ ]. Your housing expense must be greater than 31% of your gross monthly income to be eligible for a Home Affordable Modification. If you believe this verified income is incorrect, please contact us at the number provided below.

3. **Property Not Owner Occupied.** We are unable to offer you a Home Affordable Modification because you do not live in the property as your primary residence.

4. **Ineligible Property.** We are unable to offer a Home Affordable Modification because your property:

   ☐ Is vacant

   ☐ Has been condemned.

   ☐ Has more than four dwelling units.

5. **Investor Guarantor Not Participating.** We are unable to offer you a Home Affordable Modification because:

   ☐ We service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan under the Home Affordable Modification Program.

   ☐ Your loan is insured by a private mortgage insurance company that has not approved a modification under the Home Affordable Modification Program.

   ☐ Your loan is guaranteed and the guarantor has not approved a modification under the Home Affordable Modification Program.

6. **Bankruptcy Court Declined.** We are unable to offer you a Home Affordable Modification because you have filed for bankruptcy protection and the proposed modified loan terms were not approved by the Bankruptcy Court. You may wish to contact your bankruptcy counsel or trustee to discuss this decision.

7. **Negative NPV.** The Home Affordable Modification Program requires a calculation of the net present value (NPV) of a modification using a formula developed by the Department of the Treasury. The NPV calculation requires us to input certain financial information about your income and your loan including the factors listed below. When combined with other data in the Treasury model, these inputs estimate the cash flow the investor (owner) of your loan is likely to receive if the loan is modified and the investor's cash flow if the loan is not modified. Based on the NPV results the owner of your loan has not approved a modification.

If we receive a request from you within 30 calendar days from the date of this letter, we will provide you with the date the NPV calculation was completed and the input values noted below. If, within 30 calendar days of receiving this information you provide us with evidence that any of these input values are inaccurate, and those inaccuracies are material, for example a significant difference in your gross monthly income or an inaccurate zip code, we will conduct a new NPV evaluation. While there is no guarantee that a new NPV evaluation will result in the owner of your loan approving a modification, we want to ensure that the NPV evaluation is based on accurate information.

Available NPV Inputs

   a. Unpaid balance on the original loan as of [Data Collection Date]
   b. Interest rate before modification as of [Data Collection Date].
   c. Months delinquent as of [Data Collection Date]
   d. Next ARM reset date (if applicable)
   e. Next ARM reset rate (if applicable)
   f. Principal and interest payment before modification
   g. Monthly insurance payment
   h. Monthly real estate taxes
   i. Monthly HOA fees (if applicable)
   j. Monthly gross income
   k. Borrower's Total Monthly Obligations
   l. Borrower FICO

m. Co-borrower FICO (if applicable)
n. Zip Code
o. State

8. **Default Not Imminent.** We are unable to offer you a Home Affordable Modification because you are current on your mortgage loan and after reviewing the financial information you provided us we have determined that you are not at risk of default because:

☐ You have not documented a financial hardship that has reduced your income or increased your expenses, thereby impacting your ability to pay your mortgage as agreed.

☐ You have sufficient net income to pay your current mortgage payment.

☐ You have the ability to pay your current mortgage payment using cash reserves or other assets.

9. **Excessive Forbearance.** We are unable to offer you a Home Affordable Modification because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program.

10. **Previous HAMP Modification.** We are unable to offer you a Home Affordable Modification because your loan was previously modified under the Home Affordable Modification Program. The program does not allow more than one modification.

11. **Request Incomplete.** We are unable to offer you a Home Affordable Modification because you did not provide us with the documents we requested. A notice which listed the specific documents we needed and the time frame required to provide them was sent to you more than 30 days ago.

12. **Trial Plan Default.** We are unable to offer you a Home Affordable Modification because you did not make all of the required Trial Period Plan payments by the end of the trial period.

*Loan Paid Off or Reinstated.* We are not considering your request for a modification because:

☐ Your loan was paid in full on _____.

☐ Your loan was reinstated on _____ and you no longer appear to be in need of modification. If you feel that you are at risk of default please contact us to discuss your eligibility and qualification for a Home Affordable Modification.

*Offer Not Accepted by Borrower / Request Withdrawn.* We are not considering your request for a modification because:

☐ After being offered a Trial Period Plan or Home Affordable Modification you notified us on _____ that you did not wish to accept the offer.

☐ After initially asking to be considered for a Home Affordable Modification you withdrew that request on _____.

_Incomplete Information Notice._ We cannot continue to review your request for a Home Affordable Modification because:

☐ You are currently in a Trial Period Plan, however you have not provided all of the documentation we previously requested. If we do not receive the required documents by [insert expiration date of Trial Period Plan but no less than 30 days from the date of the letter] we will terminate your Trial Period Plan and may resume other means to collect any amounts due on your account. The documents we need are: [Insert list of required documents]

☐ You have requested consideration for a Trial Period Plan, however, you have not provided all of the documentation we previously requested. If we do not receive the required documents by [insert date no less than 30 days from the date of the letter] we will consider that you have withdrawn your request for a modification and may resume other means to collect any amounts due on your account. The documents we need are: [Insert list of required documents.]

# EXHIBIT "6"

Loan # 105375957

## HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
### (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: July 11, 2009

Borrower ("I")[2]: DENNIS ARDINE

Servicer ("Servicer"): BAC Home Loans Servicing, LP

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): September 26, 2005

Loan Number: 105375957

Property Address ("Property"): 6160 SHAWNEE AVENUE LAS VEGAS, NV 89107

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1. **My Representations.** I certify, represent to Servicer and agree:

   A  I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B  I live in the Property as my principal residence, and the Property has not been condemned;

   C  There has been no change in the ownership of the Property since I signed the Loan Documents;

   D  I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

   E  Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

   F  If Servicer requires me to obtain credit counseling, I will do so.

---

[2] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3155 3/09



2. **The Trial Period Plan**.  On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $468.10.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $468.10 | July 11, 2009 |
| 2 | $468.10 | August 01, 2009 |
| 3 | $468.10 | September 01, 2009 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A  TIME IS OF THE ESSENCE under this Plan;

B  Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale.  If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D  The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full.  If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E  When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F  If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that



my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

    G   I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.  **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.  **Additional Agreements.** I agree to the following:

    A   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

    B   To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

    C   That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

    D   That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



In Witness Whereof, the Servicer and I have executed this Plan.

Dated: 7/3/09

DENNIS  ARDINE

BAC Home Loans Servicing, LP

By: _____
James L. Smith

OCT 3 0 2009

Date

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3156 3/09



# EXHIBIT "7"

# Making Home Affordable Program

Servicer Performance Report Through November 2010

## Report Highlights

### Nearly 550,000 Homeowners Granted Permanent Modifications

- Nearly 30,000 new permanent modifications reported in November.
- More than 650,000 homeowners are realizing payment relief through active HAMP trial modifications and permanent modifications.
- For homeowners in permanent modifications, their median first-lien housing expense fell from 45% of their monthly income to 31%.
- As servicers continue to work through the backlog of trials lasting six months or more, the number of these aged trials has fallen below 50,000.

## This Month: Quarterly Results of Compliance Second-Look Reviews

- Making Home Affordable-Compliance (MHA-C) conducts Second Look reviews of homeowner loan files that were not in HAMP modifications to ensure that the servicer's actions were appropriate.
- MHA-C disagreed with servicer-actions an average of 2.4% of the time in the 2nd quarter, lowering the year-to-date average to 2.9%.
- During this quarter, MHA-C was unable to determine whether the loan was properly evaluated for HAMP on average 15% of the time. As a result of this significant increase from the year-to-date average of 10%, MHA-C will be conducting targeted follow-up activities to understand the cause of this increase so that Treasury may determine appropriate remedial actions.
- MHA-C performs follow-up activities on loans where MHA-C disagrees with servicer decisions or is unable to determine the appropriateness of the disposition of the loan. Historically, these follow-up activities have resulted in 41% of loans in the *Disagree* category being re-classified as *Agrees* after the servicer provided additional documentation.

## Inside:

| | |
|---|---|
| HAMP Program Snapshot | 2 |
| Characteristics of Permanent Modifications | 3 |
| Servicer Activity | 4 |
| Selected Outreach Measures | 7 |
| Disposition Path of Homeowners Ineligible for HAMP Trials | 6 |
| Selected Outreach Measures | 7 |
| Waterfall of HAMP-Eligible Borrowers | 7 |
| Results of Compliance Reviews | 8 |
| Homeowner Experience | 9 |
| HAMP Activity by State | 10 |
| HAMP Activity by Metropolitan Area | 11 |
| Modifications by Investor Type | 11 |
| List of Non-GSE Participants | 12 |
| Participants In Additional MHA Programs | 13 |
| Definitions of Compliance Activities | 14 |
| Areas of Compliance Emphasis | 15 |

# Making Home Affordable Program
## Servicer Performance Report Through November 2010

| | Total |
|---|---|
| **HAMP-Eligibility** (As of Oct. 31, 2010) | |
| Eligible Delinquent Loans[1] | 2,911,106 |
| Eligible Delinquent Borrowers[2] | 1,493,256 |
| **Trial Modifications** | |
| Trial Plan Offers Extended (Cumulative)[3] | 1,684,136 |
| All Trials Started[3] | 1,426,833 |
| Trials Reported Since Oct. 2010 Report[4] | 31,250 |
| Trial Modifications Canceled (Cumulative) | 729,409 |
| Active Trials | 148,104 |
| **Permanent Modifications** | |
| All Permanent Modifications Started | 509,620 |
| Permanent Modifications Reported Since Oct. 2010 Report | 29,972 |
| Permanent Modifications Canceled (Cumulative)[5] | 44,972 |
| Active Permanent Modifications | 504,648 |
| **FHA-HAMP** | |
| FHA-HAMP Trial Modifications Started | 1,092 |
| FHA-HAMP Permanent Modifications Started | 576 |

[1] Estimated eligible 60+ day delinquent loans as reported by servicers as of Oct. 31, 2010, include conventional loans:
- in foreclosure and bankruptcy.
- with a current unpaid principal balance less than $729,750 on a one-unit property, $934,200 on a two-unit property,
- $1,129,250 on a three-unit property and $1,403,400 on a four-unit property.
- originated on or before January 1, 2009.

[2] Estimated eligible 60+ day delinquent loans excludes:
- FHA and VA loans.
- loans that are current or less than 60 days delinquent, which may be eligible for HAMP if a borrower is in imminent default.

For servicers enrolling after September 1, 2010 that did not participate in the 60+ day delinquency survey, the delinquency count is from the servicer registration form.

[3] The automated eligible 60+ day delinquent borrowers are shown in HMAP-eligible loans, minus estimated exclusions of loans on vacant properties, loans with borrower debt-to-income ratio below 31%, loans that fail the NPV test, properties no longer owner-occupied, manufactured housing loans with title/chattel issues that exclude them from HAMP, and loans where the investor pooling and servicing agreements preclude modification. Exclusions for DTI and NPV insists are estimated using market analytics.

[4] As reported in the weekly servicer survey of large SPA servicers through December 2, 2010.

[5] Data includes HAMP modifications only. Except for the two lines in the above table, FHA-HAMP modifications are excluded from units in this report.

[6] Servicers may enter new trial modifications into the HAMP system of record anytime before the loan converts to a permanent modification.

[a] A permanent modification is canceled when the borrower has missed three consecutive monthly payments, including $90 loans paid off.



**HAMP Trials Started (Cumulative)**

**HAMP Final Modifications Started (Cumulative)**

**Permanent Modifications Started (Cumulative)**

Source: HAMP system of record. Servicers may enter new trial installations into the HAMP system of record anytime before the loan converts to a permanent modification. For example, 31,280 trials have entered the HAMP system of record since the prior report; of these, 22,545 were trials with a first payment recorded in November.

Source: HAMP system of record.

# Making Home Affordable Program

## Servicer Performance Report Through November 2010

### Modification Characteristics

- Aggregate reductions in monthly mortgage payments for borrowers who received permanent modifications are estimated to total $4.1 billion.

- The median savings for borrowers in active permanent modifications is $524.41, or 37% of the median payment before modification.

### Active Permanent Modifications by Modification Step

| Permanent Forbearance | 30.1% |
| Interest Extension | 57.8% |
| Interest Rate Reduction | 100% |

### Select Median Characteristics of Active Permanent Modifications

| Loan Characteristic | Before Modification | After Modification | Median Decrease |
|---|---|---|---|
| Front-End Debt-to-Income Ratio[1] | 45.2% | 31.0% | -14.2 pct pts |
| Back-End Debt-to-Income Ratio[2] | 79.2% | 62.4% | -14.8 pct pts |
| Median Monthly Housing Payment[3] | $1,434.98 | $838.00 | -$524.41 |

[1] Ratio of housing expenses (principal, interest, taxes, insurance and homeowners association and/or condo fees) to monthly gross income.

[2] Ratio of total monthly debt payments (including mortgage principal and interest, taxes, insurance, homeowners association and/or condo fees, plus payments on installment debts, junior liens, alimony, car lease payments and investment property payments) to monthly gross income. Borrowers who have a back-end debt-to-income ratio of greater than 55% are required to seek housing counseling under program guidelines.

[3] Principal and interest payment.



### Predominant Hardship Reasons for Active Permanent Modifications

| Loss of Income[1] | 58.8% |
| Excessive Obligation | 11.6% |
| Illness of Principal Borrower | 2.8% |

(axis: 0%  20%  40%  60%  80%)

[1] Includes borrowers who are employed but have faced a reduction in hours and/or wages as well as those who have lost their jobs.
Note: Does not include 17.5% of permanent modifications reported as Other.

### Loan Status Upon Entering Trial



Note: For all trial modifications started, "At Risk of Default" includes borrowers up to 59 days delinquent at trial entry as well as those in imminent default, "In Default" refers to borrowers 60 or more days late at trial entry.

Note: Data on the performance of permanent modifications is reported quarterly.



# Making Home Affordable Program

## Servicer Performance Report Through November 2010

| Servicer | HAMP Modification Activity by Servicer | | | |
|---|---|---|---|---|
| American Home Mortgage Servicing Inc | 53,042 | 31,538 | 28,270 | 17,204 | 8,137 | 18,157 |
| Aurora Loan Services, LLC | 31,442 | 49,177 | 38,458 | 13,992 | 1,476 | 12,630 |
| Bank of America, NA[2] | 425,308 | 456,730 | 342,602 | 93,499 | 48,749 | 83,759 |
| CitiMortgage, Inc. | 113,843 | 153,178 | 153,178 | 56,333 | 9,580 | 52,658 |
| GMAC Mortgage, LLC | 16,442 | 187,688 | 53,771 | 38,718 | 4,071 | 34,116 |
| J.P. Morgan Chase Bank, NA[3] | 203,594 | 276,554 | 222,988 | 76,140 | 17,501 | 67,722 |
| Litton Loan Servicing LP | 46,871 | 38,977 | 35,031 | 9,831 | 1,428 | 8,983 |
| Nationstar Mortgage LLC | 18,480 | 28,399 | 25,800 | 13,020 | 2,367 | 11,937 |
| Ocwen Financial Corp, Inc. | 48,880 | 42,428 | 39,077 | 27,813 | 5,576 | 24,454 |
| OneWest Bank | 41,564 | 64,184 | 47,710 | 22,844 | 4,460 | 21,393 |
| PNC Mortgage[4] | 15,155 | 23,496 | 18,758 | 4,689 | 969 | 4,350 |
| Saxon Mortgage Services, Inc. | 25,432 | 41,992 | 36,465 | 13,292 | 1,946 | 12,563 |
| Select Portfolio Servicing | 19,086 | 84,956 | 39,426 | 18,440 | 2,003 | 16,807 |
| US Bank NA | 16,059 | 15,256 | 14,019 | 6,675 | 2,750 | 8,132 |
| Wells Fargo Bank, NA[5] | 175,362 | 287,197 | 207,793 | 72,794 | 16,612 | 68,449 |
| Other SPA servicers[6] | 25,407 | 30,069 | 23,141 | 17,908 | 4,253 | 18,493 |
| Other GSE Servicers[7] | 186,307 | NA | 94,346 | 47,428 | 18,837 | 43,837 |
| **Total** | **1,463,254** | **1,804,136** | **1,426,033** | **549,620** | **148,104** | **504,646** |





Note: Per program guidelines, effective June 1, 2010 all trials must be started using verified income. Prior to June 1, some servicers initiated trials using stated income information.

[1] As of November 30, 2010, active trials initiated at least six months ago.

49,200 active trials were initiated at least six months ago.



# Making Home Affordable Program
## Servicer Performance Report Through November 2010

**Homeowners in Canceled HAMP Trial Modifications (8 Largest Servicers)**

**Survey Data Through October 2010**

**Homeowners Whose HAMP Trial Modification Was Cancelled Who Are in the Process of:**

| Servicer | Action Pending² | Action Not Allowed² Bankruptcy - Borrower In Process² | Current | Alternative Payment Plan³ | Loan Payoff | Short Sale/ Deed in Lieu | Foreclosure Starts | Foreclosure Completions | Total (As of October 2010) |
|---|---|---|---|---|---|---|---|---|---|
| American Home Mortgage Servicing Inc. | 210 | 25 | 199 | 787 | 33 | 43 | 90 | 192 | 22 | 1,601 |
| Bank of America, NA⁴ | 52,790 | 4,405 | 18,135 | 63,627 | 1,794 | 2,227 | 20,313 | 17,021 | 3,609 | 183,919 |
| CitiMortgage Inc. | 21,165 | 3,912 | 7,876 | 36,237 | 1,079 | 1,224 | 2,473 | 11,267 | 2,743 | 87,976 |
| GMAC Mortgage, LLC | 1,766 | 347 | 1,072 | 5,904 | 171 | 271 | 592 | 1,779 | 824 | 12,730 |
| JP Morgan Chase Bank NA⁵ | 12,320 | 844 | 2,814 | 61,527 | 321 | 2,506 | 4,918 | 20,900 | 7,059 | 113,309 |
| Litton Loan Servicing LP | 3,387 | 668 | 1,856 | 13,015 | 363 | 118 | 1,107 | 9,076 | 571 | 29,761 |
| OneWest Bank | 1,279 | 718 | 470 | 10,501 | 231 | 15 | 726 | 3,658 | 1,962 | 19,560 |
| Wells Fargo Bank NA⁶ | 4,550 | 737 | 13,252 | 63,073 | 1,024 | 4,221 | 4,448 | 19,333 | 8,090 | 118,666 |
| **TOTAL (These 8 Servicers)** | 97,605 17.4% | 11,660 2.1% | 45,674 8.1% | 255,269 45.4% | 5,022 0.9% | 10,725 1.9% | 34,667 6.2% | 76,626 13.6% | 24,974 4.4% | 562,222 100.0% |

**Disposition Path**

The most common causes of trial cancellations are:
- Insufficient documentation
- Trial plan payment default
- Ineligible borrower: first-lien housing expense is already below 31% of household income

Note: Data is to be reported by servicers for actions completed through October 31, 2010.
¹ As defined by each servicer.
² Fall loans that have been cancelled, but no further action has yet been taken.
³ An arrangement with the borrower and servicer that does not involve a formal loan modification.
⁴ Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
⁵ J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
⁶ Wells Fargo Bank, NA includes all loans previously serviced under Wachovia Mortgage, FSB.
Note: Excludes cancellations pending data correction and loans otherwise removed from servicing portfolios.

# Making Home Affordable Program
## Servicer Performance Report Through November 2010

### Homeowners Not Accepted for a HAMP Trial Modification — Survey Data Through October 2010 (8 Largest Servicers)

| Servicer | Homeowners Not Accepted for a HAMP Trial Modification Who Are in the Process of: | | | | | | Disposition Path | | | Total (As of October 2010) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Action Pending[2] | Action Not Allowed – Bankruptcy In Process | Borrower Current | Alternative Modification | Payment Plan[3] | Loan Payoff | Short Sale/ Deed in Lieu | Foreclosure Starts | Foreclosure Completions | |
| American Home Mortgage Servicing Inc. | 1,494 | 497 | 4,590 | 18,524 | 454 | 87 | 858 | 3,562 | 343 | 30,409 |
| Bank of America, NA[4] | 20,395 | 3,628 | 5,331 | 13,921 | 1,212 | 1,331 | 19,405 | 33,750 | 12,857 | 115,846 |
| CitiMortgage, Inc. | 39,366 | 7,736 | 34,762 | 34,280 | 6,603 | 2,460 | 3,664 | 8,662 | 4,081 | 141,824 |
| GMAC Mortgage, LLC | 25,421 | 666 | 27,902 | 34,312 | 2,744 | 1,639 | 4,418 | 10,373 | 7,263 | 127,900 |
| JP Morgan Chase Bank NA[5] | 48,292 | 3,365 | 91,441 | 89,961 | 853 | 21,650 | 7,769 | 27,744 | 7,808 | 298,882 |
| Litton Loan Servicing LP | 9,685 | 3,673 | 7,815 | 12,697 | 1,004 | 444 | 9,118 | 9,973 | 3,118 | 52,927 |
| OneWest Bank | 5,103 | 2,107 | 17,220 | 6,351 | 1,124 | 470 | 1,833 | 9,945 | 3,499 | 47,652 |
| Wells Fargo Bank NA[6] | 18,775 | 3,676 | 46,362 | 53,472 | 7,289 | 5,880 | 10,273 | 19,163 | 10,394 | 171,216 |
| TOTAL (These 8 Servicers) | 168,531 | 29,553 | 237,423 | 263,528 | 15,388 | 33,961 | 52,337 | 132,972 | 49,373 | 982,466 |
| | 17.2% | 3.0% | 24.2% | 26.8% | 1.6% | 3.5% | 5.3% | 13.5% | 5.0% | 100.0% |

The most common causes of trials not accepted are:
- Insufficient documentation
- Ineligible borrower: first-lien housing expense is already below 31% of household income
- Ineligible mortgage

Note: Data is as reported by servicers for actions completed through October 31, 2010.
[1] As defined by cap amount.
[2] Homeowners who were not approved for a HAMP trial modification, but no further action has yet been taken.
[3] An arrangement with the borrower and servicer that does not involve a formal loan modification.
[4] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
[5] J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[6] Wells Fargo Bank, NA includes all loans previously reported under Wachovia Mortgage, FSB.
Note: Excludes loans removed from servicing portfolios.

# Making Home Affordable Program

## Servicer Performance Report Through November 2010



### Selected Homeowner Outreach Measures



| | |
|---|---|
| Homeowner Outreach Events Hosted Nationally by Treasury and Partners (cumulative) | 49 |
| Homeowners Attending Treasury-Sponsored Events (cumulative) | 49,506 |
| Servicer Solicitation of Borrowers (cumulative)[1] | 6,638,016 |
| Page views on MakingHomeAffordable.gov (November 2010) | 2,560,921 |
| Page views on MakingHomeAffordable.gov (cumulative) | 104,440,505 |
| Percentage to Goal of 3-4 Million Modification Offers[2] | 42-56% |

[1] Source: survey data provided by SPA servicers. Servicers run unsupported by HAMP to solicit information from borrowers 60+ days delinquent, regardless of eligibility for a HAMP modification.
[2] In 2009, Treasury set a goal of offering help to 3-4 million borrowers through the end of 2012.

### Call Center Volume

| | Cumulative | November |
|---|---|---|
| Total Number of Calls Taken at 1-888-995-HOPE (since program inception) | 1,812,035 | 89,240 |
| Borrowers Receiving Free Housing Assistance Through the Homeowner's HOPE™ Hotline | 870,958 | 40,292 |

Source: Homeowner's HOPE™ Hotline.

### Waterfall of Estimated Eligible Borrowers

Not all 60-day delinquent loans are eligible for HAMP. Other characteristics may preclude homeowner eligibility. Based on the estimates, of the 5.1 million homeowners who are currently 60+ days delinquent, 1.5 million homeowners are eligible for HAMP. As this represents a point-in-time snapshot of the delinquency population and estimated HAMP eligibility, we expect that more homeowners will become seriously delinquent between now and the end of 2012, and some of those homeowners will be eligible for HAMP.



Loans (Millions)

| | |
|---|---|
| 1st Lien, 60+ Days Delinquent Servicer | 5.1 |
| Less: Non-Participating HAMP Servicer | 4.5 |
| Less: FHA or VA | 3.8 |
| Less: Non-Owner Occupied or Deceased | 3.1 |
| Less: Jumbo Conforming Loans and Expired Loans After 1/1/2009 | 2.9 |
| HAMP-Eligible 60+ Day Delinquent Loans (GSE and SPA Servicers) | 2.9 |
| Less: DTI Less Than 31% | 2.2 |
| Less: Negative NPV | 1.9 |
| Less: Vacant, Properties Engine, and Other Exclusions** | 1.5 |
| Estimated HAMP-Eligible 60+ Day Delinquent Borrowers | 1.5 |

** Other exclusions include: no longer owner-occupied; investor's pooling and servicing agreement precludes modification; and manufactured housing loans with titling/chattel issues that exclude them from HAMP.

Note: Chart refers only to borrowers eligible for the first-lien modification program.

Sources: Fannie Mae; monthly survey of participating servicers for October 31, 2010. Total 60+ day delinquency figure derived from 3rd Quarter 2010 MBA National Delinquency Survey. Excluded loans are as reported by large servicers by survey who have signed a servicer participation agreement for HAMP.

# Making Home Affordable Program

## Servicer Performance Report Through November 2010

**Results of Compliance Second Look Reviews (Q2 2010)**

Making Home Affordable-Compliance (MHA-C) conducts Second Look[1,2] reviews of homeowner loan files that were not in HAMP modifications to ensure that the servicer's actions were appropriate.



Results of Q2 2010 Second Look Reviews

- MHA-C disagreed with servicer actions an average of 2.4% in the 2nd quarter (2.9% YTD). MHA-C conducts targeted follow-up on servicers with above-average *Disagree* rates.

- An average of 15.1% of loan file reviews are *Pending Further Review* in the 2nd quarter, above the YTD average of 10.0%. MHA-C will conducted targeted reviews to understand this increase.

- For *Disagree* or *Pending Further Review* results, actions typically required of servicers are: reevaluating loans not offered HAMP modifications; submitting additional documentation; clarifying loan status; engaging in process remediation or other actions as directed by Treasury. For such results, servicers are reminded of their obligation to forestall foreclosure of the loan until the loans are resolved.

- Historically, follow-up activities have resulted in re-classifying 41% of loans in the *Disagrees* category as *Agrees* after the servicer provided additional documentation. For an additional 19% of Disagrees, MHA-C confirmed that appropriate remedial actions had been taken by the servicers.

- The results of Second Look reviews help determine the types of other compliance activities and the frequency with which those activities will be conducted. Please see Appendix B for a detailed description of compliance activities.

[1] Second Look Results are derived from a statistical sample of loan files for borrowers not in a HAMP modification (typically 100 loan files). Chart allows for largest stratiform; an additional 5 servicers were evaluated in the 2nd quarter.
[2] Starting with this report, loans where borrowers were in process of consideration for HAMP are included in the calculation of results, which allows for a more comprehensive picture of servicers' HAMP compliance.
[3] Cases where the borrower was appropriately excluded or evaluated for HAMP.
[4] Cases where MHA-C was unable to determine if the servicer's actions were appropriate without further information from the servicer.

# Making Home Affordable Program

## Servicer Performance Report Through November 2010

### Average Speed to Answer Homeowner Calls (October)

Average of Calls to Homeowner's HOPE™ Hotline for October: 2.2 Seconds

Seconds: 0, 10, 20, 30, 40, 50, 60

Calls to Servicer: OneWest, Bank of America NA, GMAC, Litton, JP Morgan Chase NA, Wells Fargo, CitiMortgage, Am. Home Servicing

Source: Survey data through October 31, 2010, from servicers on call volume to loss mitigation lines.

### Call Abandon Rate (October)

Homeowner's HOPE™ Hotline Average for October: 1.4%

0%, 1%, 2%, 3%, 4%, 5%

Homeowner's HOPE™ Hotline

Calls to Servicer: OneWest, Bank of America NA, GMAC, Litton, JP Morgan Chase NA, Wells Fargo, GMAC, Am. Home Servicing, CitiMortgage

Source: Survey data through October 31, 2010, from servicers on call volume to loss mitigation lines.

*As defined by call count.



### Homeowner Experience (8 Largest Servicers)

### Servicer Complaint Rate to Homeowner's HOPE™ Hotline (Program to Date Through November 30)

Program to date, there have been 882,644 calls to the Homeowner's HOPE™ Hotline regarding a specific SPA servicer, of which 6.0% included complaints. Below shows specific complaint rates.

Program to Date Average: 6.0%

% of Calls for Specific Servicer

10%, 9%, 8%, 7%, 6%, 5%, 4%, 3%

Complaints (PTD): OneWest 167, JP Morgan Chase NA 10,502, Bank of America NA 17,294, Litton 1,225, GMAC 2,109, Am. Home Servicing 272, CitiMortgage 725, Wells Fargo 1,780

Source: Homeowner's HOPE™ Hotline. Item Complaint rate is the volume of a specific servicer's call volume that are complaints (i.e., for all calls about OneWest, 9.3% included complaints).

### Servicer Time to Resolve Third-Party Escalations (Program to Date Through November 30)

Target: 25 Calendar Days

Calendar Days: 0, 10, 20, 30, 40, 50

Resolved: Bank of America NA 2,860, JP Morgan Chase NA 1,903, Am. Home Servicing 272, OneWest 461, CitiMortgage 725, Wells Fargo 1,780, Litton 412, GMAC 554

Cases (PTD): 167

Source: HAMP Solutions Center. Target of 25 calendar days. Includes an estimated 5 days processing by HAMP Solutions Center.



MAKING HOME AFFORDABLE

9

# Making Home Affordable Program

Servicer Performance Report Through November 2010

## HAMP Activity by State — Modification Activity by State

| State | | | | | Other | | | | |
|---|---|---|---|---|---|---|---|---|---|
| AK | 77 | 201 | 276 | 0.0% | MT | 195 | 538 | 733 | 0.1% |
| AL | 998 | 2,905 | 3,903 | 0.6% | NC | 2,719 | 9,466 | 12,185 | 1.9% |
| AR | 336 | 1,160 | 1,496 | -0.2% | ND | 23 | 85 | 108 | 0.0% |
| AZ | 6,151 | 25,288 | 31,439 | 4.8% | NE | 198 | 675 | 871 | 0.1% |
| CA | 33,287 | 118,596 | 151,883 | 23.3% | NH | 701 | 2,377 | 3,078 | 0.5% |
| CO | 1,853 | 7,134 | 8,987 | 1.4% | NJ | 4,946 | 16,253 | 21,201 | 3.2% |
| CT | 1,819 | 6,429 | 8,248 | 1.3% | NM | 548 | 1,560 | 2,128 | 0.3% |
| DC | 248 | 844 | 1,092 | 0.2% | NV | 3,924 | 13,225 | 17,149 | 2.6% |
| DE | 463 | 1,581 | 2,044 | 0.3% | NY | 7,087 | 22,082 | 29,169 | 4.5% |
| FL | 17,880 | 60,117 | 77,997 | 11.9% | OH | 3,485 | 11,374 | 14,860 | 2.3% |
| GA | 5,541 | 18,250 | 23,791 | 3.6% | OK | 412 | 1,161 | 1,573 | 0.2% |
| HI | 628 | 1,883 | 2,511 | 0.4% | OR | 1,586 | 5,478 | 7,064 | 1.1% |
| IA | 363 | 1,296 | 1,659 | 0.3% | PA | 3,253 | 10,524 | 13,777 | 2.1% |
| ID | 657 | 1,883 | 2,540 | 0.4% | RI | 746 | 2,616 | 3,362 | 0.5% |
| IL | 7,884 | 27,130 | 35,014 | 5.4% | SC | 1,388 | 4,882 | 6,270 | 1.0% |
| IN | 1,508 | 4,988 | 6,496 | 1.0% | SD | 82 | 192 | 264 | 0.0% |
| KS | 389 | 1,176 | 1,565 | 0.2% | TN | 1,668 | 5,214 | 6,802 | 1.1% |
| KY | 558 | 1,962 | 2,520 | 0.4% | TX | 4,441 | 12,784 | 17,225 | 2.6% |
| LA | 988 | 2,573 | 3,561 | 0.5% | UT | 1,436 | 4,686 | 6,122 | 0.9% |
| MA | 3,669 | 12,686 | 16,355 | 2.5% | VA | 3,553 | 12,492 | 16,045 | 2.5% |
| MD | 4,652 | 16,503 | 21,155 | 3.2% | VT | 124 | 415 | 539 | 0.1% |
| ME | 477 | 1,377 | 1,854 | 0.3% | WA | 2,948 | 9,668 | 12,606 | 1.9% |
| MI | 4,878 | 17,082 | 21,960 | 3.4% | WI | 1,550 | 4,999 | 6,549 | 1.0% |
| MN | 2,360 | 9,404 | 11,764 | 1.8% | WV | 228 | 761 | 989 | 0.2% |
| MO | 1,632 | 5,482 | 7,114 | 1.1% | WY | 74 | 251 | 325 | 0.0% |
| MS | 614 | 1,931 | 2,545 | 0.4% | | 898 | 1,019 | 1,917 | 0.3% |

\* Includes Guam, Puerto Rico and the U.S. Virgin Islands.

### HAMP Modifications

Note: Includes active trial and permanent modifications from the official HAMP system of record.

- ☐ 5,000 and lower
- ☐ 5,001 – 10,000
- ☐ 10,001 – 20,000
- ☒ 20,001 – 35,000
- ☒ 35,001 and higher

### Mortgage Delinquency Rates by State

60+ Day Delinquency Rate

- ☐ 5.0% and lower
- ☐ 5.01% – 10.0%
- ☐ 10.0% – 15.0%
- ☒ 15.01% – 20.0%
- ☒ 20.01% and higher

Source: 3rd Quarter 2010
National Delinquency
Survey, Mortgage
Bankers Association.

# Making Home Affordable Program
### Servicer Performance Report Through November 2010

## Metropolitan Areas With Highest HAMP Activity

| Metropolitan Area | | | | % of HAMP Activity |
|---|---|---|---|---|
| Los Angeles-Long Beach-Santa Ana, CA | 9,663 | 33,960 | 43,623 | 6.7% |
| New York-Northern New Jersey-Long Island, NY-NJ-PA | 9,390 | 30,277 | 39,667 | 6.1% |
| Riverside-San Bernardino-Ontario, CA | 6,934 | 27,176 | 34,110 | 5.2% |
| Chicago-Joliet-Naperville, IL-IN-WI | 7,623 | 26,183 | 33,806 | 5.2% |
| Miami-Fort Lauderdale-Pompano Beach, FL | 7,184 | 23,348 | 30,532 | 4.7% |
| Phoenix-Mesa-Glendale, AZ | 4,990 | 20,945 | 25,935 | 4.0% |
| Washington-Arlington-Alexandria, DC-VA-MD-WV | 4,809 | 17,701 | 22,510 | 3.4% |
| Atlanta-Sandy Springs-Marietta, GA | 4,411 | 14,796 | 19,207 | 2.9% |
| Las Vegas-Paradise, NV | 3,248 | 10,849 | 14,097 | 2.2% |
| Detroit-Warren-Livonia, MI | 2,984 | 10,337 | 13,321 | 2.0% |
| Orlando-Kissimmee-Sanford, FL | 2,830 | 9,803 | 12,633 | 1.9% |
| Boston-Cambridge-Quincy, MA-NH | 2,598 | 9,062 | 11,660 | 1.8% |
| San Francisco-Oakland-Fremont, CA | 2,755 | 8,825 | 11,580 | 1.8% |
| Sacramento-Arden-Arcade-Roseville, CA | 2,324 | 8,646 | 10,970 | 1.7% |
| San Diego-Carlsbad-San Marcos, CA | 2,383 | 8,337 | 10,720 | 1.6% |

A complete list of HAMP activity for all MSAs is available at
*http://www.makinghomeaffordable.gov/docs/MSA%20Data%20Nov%202010.pdf*

## Modifications by Investor Type (Large Servicers)

| Servicer | GSE | Private | Portfolio | Total |
|---|---|---|---|---|
| Bank of America, NA[1] | 81,336 | 42,846 | 6,327 | 130,508 |
| JP Morgan Chase NA[2] | 39,206 | 31,996 | 13,981 | 85,223 |
| Wells Fargo Bank, NA[3] | 46,869 | 12,935 | 26,265 | 86,106 |
| CitiMortgage, Inc. | 40,793 | 14,407 | 16,236 | 71,436 |
| GMAC Mortgage, LLC | 22,213 | 5,882 | 10,292 | 38,187 |
| Ocwen Financial Corporation, Inc. | 6,841 | 22,912 | 277 | 30,030 |
| OneWest Bank | 12,681 | 11,288 | 1,892 | 25,861 |
| American Home Mortgage Servicing, Inc. | 1,270 | 23,334 | 0 | 24,604 |
| Select Portfolio Servicing | 487 | 18,338 | 1,845 | 18,670 |
| Saxon Mortgage Services Inc. | 508 | 11,862 | 1,139 | 14,509 |
| Aurora Loan Services, LLC | 7,230 | 6,865 | 211 | 14,306 |
| Nationstar Mortgage LLC | 9,311 | 4,977 | 16 | 14,304 |
| US Bank NA | 7,346 | 19 | 3,517 | 10,882 |
| Litton Loan Servicing LP | 1,075 | 9,337 | 0 | 10,412 |
| PNC Mortgage[4] | 4,655 | 243 | 441 | 5,339 |
| Remainder of HAMP Servicers | 70,087 | 6,436 | 6,897 | 83,420 |
| Total | 351,958 | 211,474 | 89,320 | 652,752 |

[1] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loans Services and Wilshire Credit Corporation.
[2] J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[3] Wells Fargo Bank, NA includes all loans previously reported under Wachovia Mortgage, FSB.
[4] Formerly National City Bank.

Note: Figures reflect active trials and permanent modifications.

# Making Home Affordable Program

## Servicer Performance Report Through November 2010

### Appendix A: Non-GSE Participation in HAMP

Servicers participating in the HAMP First-Lien Modification Program may also offer additional homeowner incentives, including Home Affordable Foreclosure Alternatives (HAFA), at least three months' forbearance for unemployed borrowers, and Principal Reduction Alternative (PRA).

| | | |
|---|---|---|
| AgFirst Farm Credit Bank | First Bank | Roebling Bank |
| Allstate Mortgage Loans & Investments, Inc. | First Financial Bank, N.A. | RoundPoint Mortgage Servicing Corporation |
| American Eagle Federal Credit Union | First Keystone Bank | Saxon Mortgage Services, Inc. |
| American Finance House LARIBA | First National Bank of Grant Park | Schools Financial Credit Union |
| American Home Mortgage Servicing, Inc | First Safety Bank | SEFCU |
| AMS Servicing, LLC | Franklin Credit Management Corporation | Select Portfolio Servicing |
| Aurora Loan Services, LLC | Franklin Savings | Servis One Inc., dba BSI Financial Services, |
| Bank of America, N.A.[1] | Fresno County Federal Credit Union | Inc. |
| Bank United | GFA Federal Credit Union | ShoreBank |
| Bay Federal Credit Union | Glass City Federal Credit Union | Silver State Schools Credit Union |
| Bayview Loan Servicing, LLC | GMAC Mortgage, LLC | Specialized Loan Servicing, LLC |
| Bramble Savings Bank | Golden Plains Credit Union | Spirit of Alaska Federal Credit Union |
| Carrington Mortgage Services, LLC | Grafton Suburban Credit Union | Stanford Federal Credit Union |
| CCO Mortgage | Great Lakes Credit Union | Sterling Savings Bank |
| Central Florida Educators Federal Credit | Greater Nevada Mortgage Services | Suburban Mortgage Company of New |
| Union | Green Tree Servicing LLC | Mexico |
| Centnue Bank | Hartford Savings Bank | Technology Credit Union |
| CitiMortgage, Inc. | Hillsdale County National Bank | Tempe Schools Credit Union |
| Citizens 1st National Bank | HomEq Servicing | The Golden 1 Credit Union |
| Citizens Community Bank | HomeStar Bank & Financial Services | U.S. Bank National Association |
| Citizens First Wholesale Mortgage | Horicon Bank | United Bank |
| Company | Horizon Bank, NA | United Bank Mortgage Corporation |
| Community Bank & Trust Company | IberiaBank | University First Federal Credit Union |
| Community Credit Union of Florida | IBM Southeast Employees' Federal Credit | Vantium Capital, Inc. |
| CUC Mortgage Corporation | Union | Verity Credit Union |
| DuPage Credit Union | IC Federal Credit Union | Vist Financial Corp. |
| Eaton National Bank & Trust Co | Idaho Housing and Finance Association | Wealthbridge Mortgage Corp. |
| Farmers State Bank | iServe Residential Lending LLC | Wells Fargo Bank, NA[4] |
| Fay Servicing, LLC | iServe Servicing Inc. | Wescom Central Credit Union |
| Fidelity Homestead Savings Bank | J.P.Morgan Chase Bank, NA[2] | Yadkin Valley Bank |
| | Lake City Bank | |
| | Lake National Bank | |
| | Liberty Bank and Trust Co. | |
| | Litton Loan Servicing | |
| | Los Alamos National Bank | |
| | Magna Bank | |
| | Mainstreet Credit Union | |
| | Marix Servicing, LLC | |
| | Metropolitan National Bank | |
| | Midland Mortgage Company | |
| | Midwest Bank & Trust Co. | |
| | Midwest Community Bank | |
| | Mission Federal Credit Union | |
| | MorEquity, Inc. | |
| | Mortgage Center, LLC | |
| | Mortgage Clearing Corporation | |
| | Nationstar Mortgage LLC | |
| | Navy Federal Credit Union | |
| | Oakland Municipal Credit Union | |
| | Ocwen Financial Corporation, Inc. | |
| | OneWest Bank | |
| | ORNL Federal Credit Union | |
| | Park View Federal Savings Bank | |
| | Pathfinder Bank | |
| | PennyMac Loan Services, LLC | |
| | PNC Bank, National Association | |
| | PNC Mortgage[3] | |
| | Purdue Employees Federal Credit Union | |
| | QLending, Inc. | |
| | Quantum Servicing Corporation | |
| | Residential Credit Solutions | |
| | RG Mortgage Corporation | |

[1] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
[2] J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[3] Formerly National City Bank
[4] Wells Fargo Bank, NA includes all loans previously reported under Wachovia Mortgage, FSB.

# Making Home Affordable Program

**Servicer Performance Report Through November 2010**

## Additional Making Home Affordable Programs

### Second-Lien Modification Program (2MP)

Bank of America, NA[1]
Bayview Loan Servicing, LLC
CitiMortgage, Inc.
Community Credit Union of Florida
GMAC Mortgage, LLC
Green Tree Servicing LLC
iServe Residential Lending, LLC
iServe Servicing, Inc.
J.P. Morgan Chase Bank, NA[2]
Nationstar Mortgage LLC
OneWest Bank
PennyMac Loan Services, LLC
PNC Bank, National Association
PNC Mortgage[3]
Residential Credit Solutions
Servis One Inc., dba BSI Financial Services, Inc.
Wells Fargo Bank, NA[4]

### FHA First-Lien Program (FHA-HAMP)

Amarillo National Bank
American Financial Resources Inc.
Aurora Financial Group, Inc.
Aurora Loan Services, LLC
Banco Popular de Puerto Rico
Bank of America, NA[3]
Capital International Financial, Inc.
CitiMortgage, Inc.
CU Mortgage Services, Inc.
First Federal Bank of Florida
First Mortgage Corporation

Franklin Savings
Gateway Mortgage Group, LLC
GMAC Mortgage, LLC
Green Tree Servicing LLC
Guaranty Bank
iServe Residential Lending, LLC
iServe Servicing, Inc.
James B. Nutter & Company
J.P. Morgan Chase Bank, NA[2]
M&T Bank
Marix Servicing, LLC
Marsh Associates, Inc.
Midland Mortgage Company
Nationstar Mortgage LLC
Ocwen Financial Corporation, Inc.
PennyMac Loan Services, LLC
PNC Mortgage[3]
RBC Bank (USA)
Residential Credit Solutions
Saxon Mortgage Services, Inc.
Schmidt Mortgage Company
Select Portfolio Servicing
Servis One Inc., dba BSI Financial Services, Inc.
Spirit of Alaska Federal Credit Union
Stockman Bank of Montana
Wells Fargo Bank, NA[4]
Weststar Mortgage, Inc.

### FHA Second-Lien Program (FHA 2LP)

Bank of America, NA[1]
Bayview Loan Servicing, LLC
CitiMortgage, Inc.
Flagstar Capital Markets Corporation
GMAC Mortgage, LLC
Green Tree Servicing LLC
J.P. Morgan Chase Bank, NA[2]
Nationstar Mortgage LLC
PNC Bank, National Association
PNC Mortgage[3]
Residential Credit Solutions
Saxon Mortgage Services, Inc.
Select Portfolio Servicing
Wells Fargo Bank, NA[4]

### Rural Housing Service Modification Program (RD-HAMP)

Banco Popular de Puerto Rico
Bank of America, N.A.[1]
Horicon Bank
J.P. Morgan Chase Bank, NA[2]
Magna Bank
Marix Servicing, LLC
Midland Mortgage Company
Nationstar Mortgage LLC
Wells Fargo Bank, NA[4]

---

[1] Bank of America, NA includes Bank of America, NA, BAC Home Loans Servicing LP, Home Loan Services and Wilshire Credit Corporation.
[2] J.P. Morgan Chase Bank, NA includes EMC Mortgage Corporation.
[3] Formerly National City Bank.
[4] Wells Fargo Bank, NA includes all loans previously reported under Wachovia Mortgage FSB.

MAKING HOME AFFORDABLE

# Making Home Affordable Program

Servicer Performance Report Through November 2010

Note: *Areas of compliance emphasis and servicer-specific compliance data will be updated quarterly.*

## Description of Compliance Activities

Freddie Mac, serving as Compliance Agent for Treasury's Home Affordable Modification Program (HAMP), has created a separate division known as Making Home Affordable - Compliance (MHA-C). Using a risk-based approach, MHA-C conducts a number of different types of compliance activities to assess servicer compliance with HAMP guidelines for those servicers that have signed a servicer participation agreement with Treasury and for those loans for which Treasury pays incentives (non-GSE loans), as described below.

**On Site Reviews: Implementation** — Reviews to assess the servicer's overall execution of the HAMP program. Areas covered include, among other things, solicitation, eligibility, underwriting, document management, payment processing, reporting, and governance. MHA-C performs reviews of larger servicers on not less than a semi-annual schedule and reviews smaller servicers on at least an annual schedule.

**On Site Reviews: Readiness & Governance** — Reviews to assess the servicer's preparedness for complying with new/future HAMP requirements or to research a trend or

potential implementation risk. MHA-C performs such reviews as needed, determined by frequency of new program additions.

**NPV Reviews** — Reviews to assess the servicer's adherence to the HAMP NPV guidelines. For those servicers that have elected to recode the NPV model into their own systems (recoders), MHA-C assesses whether the servicer's recoded NPV model is accurately calculating NPV and whether the servicer's model usage is consistent with HAMP guidelines. Recoders are subject to off-site testing at least quarterly and to on-site reviews at least semi-annually. For servicers using the Treasury NPV Web Portal, MHA-C reviews data submissions to the Portal on a monthly basis.

**Loan File Reviews** — Reviews of samples of the servicer's non-performing loan portfolio primarily to assess whether required steps in the modification process have been documented in the loan files and whether loan modification decisions were appropriate. This includes reviews of loans that have successfully converted to a permanent modification, to ensure they meet the HAMP guidelines. It also includes reviews of loans that have not been offered HAMP modifications, to ensure that their exclusion was appropriate ("Second Look" reviews).

MHA-C conducts these Loan File reviews on a statistical sample for each servicer (typically 100 loan files per larger servicer). Larger servicers' non-performing loan portfolios are sampled and reviewed on a monthly cycle. MHA-C statistically samples and reviews smaller servicers' non-performing loan portfolios on a quarterly or semi-annual cycle.

**Incentive Payment Reviews** — Reviews to assess the accuracy and validity of Treasury incentive payments to borrowers and investors, including whether borrower payments are appropriately allocated to borrowers' loan principal in accordance with HAMP guidelines. MHA-C performs such reviews at least annually on the largest servicers.

As stated in the August report, beginning in the 3rd quarter of the 2010 sampling period, MHA-C revised its sampling strategy to sample monthly from all servicers to provide more consistent trending by servicer and greater comparability of results across servicers. Results from this new sampling strategy will be included in the next publication of Compliance results.

*(See next page for Areas of Compliance Emphasis)*

# Making Home Affordable Program

Servicer Performance Report Through November 2010

In the coming months MHA-C will focus on the following areas of emphasis, to ensure ongoing compliance.

## Cancellations

Servicers are required to comply with HAMP guidance when canceling loans in HAMP trials. The Second Look review process conducted by MHA-C will continue to include an evaluation of servicers' cancellation activities, especially those around servicers' timely and appropriate decisioning and borrower communications.

MHA-C will conduct targeted reviews of the cancellations of aged trials over the course of the next several months. MHA-C will evaluate whether servicers are making appropriate cancellation decisions, with a specific focus on those loans where the cancellation reason indicates that the borrower had not made timely payments. MHA-C expects servicers to provide documentation supporting cancellation decisions and evidence that borrower notifications are timely and include all necessary information.

## Pre-Foreclosure Certification

Due to recent concerns around foreclosures and the issuance of new HAMP guidance effective in June, MHA-C will specifically focus on pre-foreclosure activities and certification

requirements. Servicers may not refer any loan to foreclosure or conduct a scheduled foreclosure sale without first satisfying the "reasonable effort" solicitation standard and borrower communication requirements described in HAMP guidelines. In addition, within seven business days of a scheduled foreclosure sale, servicers must provide the foreclosure attorney or trustee with a written certification that the servicer has satisfied the requirements to solicit and evaluate eligible borrowers as defined by HAMP guidelines, and that all other available loss mitigation alternatives have been exhausted and a non-foreclosure outcome could not be reached.

These reviews will include:

- Processes for satisfying the "reasonable effort" standard and for ensuring that consideration of HAMP and borrower notifications are executed and appropriately documented; and
- Processes for completing consideration of HAMP and other foreclosure alternatives, as appropriate, prior to any foreclosure referral or foreclosure sale; and
- Processes for providing foreclosure attorneys or trustees with accurate and timely certifications prior to a scheduled foreclosure sale.

## IR2 Reporting and Data Integrity

Servicers are required to submit HAMP loan-level data to the Program Administrator's system of record (IR2), and that data is required to be accurate and consistent with source documentation. IR2 data is used to monitor and report on HAMP activity levels and to calculate servicer, borrower, and investor incentive payments. As stated in prior reports, reporting and data integrity controls will continue to be a focus. MHA-C has recently conducted preliminary data mapping exercises with the Program Administrator and will be assessing servicers' information technology (IT) controls over IR2 reporting over the coming months, with an emphasis on system interfaces and reconciliations of data between systems.

MHA-C will continue testing IR2 data against source documentation, including loan files, with particular attention on the data elements used in the establishment of borrower payments and the calculation of incentives. MHA-C will also review servicers' calculations for accuracy and consistency with HAMP guidelines.